SAUNDERS, J.,
dissenting.
|TI respectfully dissent and would grant the commission’s writ. I find that the trial court abused its discretion by allowing Hebert to modify the administrative record and present additional evidence.
The record shows that Hebert had full knowledge that using Benzonatate on his racehorses in order to gain an unfair advantage against his competitors was prohibited by the racing commission. At his administrative hearing, Hebert testified as follows:
Q. And you admit that you gave a drug, Benzonatate, to each of these eight horses that I’m going to run through the dates on?
A. That is correct.
Q. And you admit that this was a non-permissive medication pursuant to the rules of racing, correct?
A. That’s correct.
Hebert admitted guilt at his administrative hearing and accepted a three-year suspension and redistribution of the purses in connection with his use of Benzonatate. Less than three months after making these, admissions and freely entering his plea, Hebert sought leave from the trial court to conduct additional discovery and present additional evidence. He sought to argue that Benzonatate was not included by name in the Association of Racing Commissioners ^International, Inc.’s (“ARCI”) list of prohibited drugs until the day after his final win.
Louisiana Revised Statutes 94:964(E) dictates that Hebert may only present such evidence if “the additional evidence is material and ... there were good reasons for failure to present it in the proceeding before the agency.”
First, the evidence Hebert seeks to add is not material. The majority notes that the category in which ARCI classifies a prohibited drug affects the penalty for administering that drug. The majority suggests that because of this, whether or not ARCI prohibited Benzonatate by name when Hebert used it is material. However, La.Admin.Code tit. 35, § 1.1795(C) provides in pertinent part that “[u]nknown or unidentified drugs or substances which are prohibited but not listed shall be appropriately classified by the state chemist upon discovery or detection.” (Emphasis added.) Therefore, drugs may certainly be prohibited without being listed, as was the case of Benzonatate at the time Hebert used it. In fact, La.Admin.Code tit. 35, § 1.1727 states, “No person shall administer, or cause or knowingly permit to be administered, or connive at the administration of any drug not permitted by Chapter 15 to any horse to be entered or entered for a race.” Chapter 15 permits only two nonsteroidal/anti-inflammatory medications by name — Phenylbutazone and Oxyphenylbutazone — and six “bleeder” medications by name, none of which are Benzonatate. La.Admin.Code til. 35, §§ I. *615 1505, 1509. Title 35 prohibits use of all other drugs at or near the track except as administered by a licensed veterinarian. La.Admin.Code tit. 35, §§ 1.1501, 1505. Furthermore, La.Admin.Code tit. 35, § I. 1717 states, “The use of a stimulant, depressant, or anesthetic in a manner that might affect, or tend to affect, the racing performance of a horse is prohibited.” The additional evidence that Hebert seeks in conducting discovery regarding the state chemist’s classification of Benzona-tate, and | ¡¡regarding the timeline of events in connection with its listing, is therefore not material.
Second, Hebert has presented no reason whatsoever for his failure to discover this information, including his failure to take the deposition of the state’s chemist prior to the proceeding before the agency. Hebert argues that since Benzonatate was not listed as prohibited when he used it, he lacked notice that it was prohibited. Hebert’s subjective knowledge of whether or not he was violating a rule does not affect the application of La.R.S. 49:964(E), nor does it provide a good reason shown for Hebert’s failure to conduct discovery. Notwithstanding the fact that Hebert has already testified under oath that he believed the drug was prohibited by the rules of racing, such a notice requirement does not apply to an administrative case such as this.
Hebert argues that the additional evidence is material because he “did not realize that he was being punished without just cause.” This discussion of Hebert’s subjective knowledge implies a due process argument; however, I cannot agree that this case involves constitutional rights. No man has a right to participate in the highly regulated Louisiana race horse gaming industry; it is a privilege that may be likened to operating a gaming establishment or driving on Louisiana highways. As such, it is a privilege governed not by the notice requirement of the due process clause, but instead is within the discretion of the administrative body charged with regulating the activity — here, the commission. Mr. Hebert argues that he should not be penalized because the penalty for using Benzonatate on his horses was not yet established when he acted, as the drug was not yet classified at that time. This argument may succeed if constitutional or criminal law were to apply in this case. However, solely administrative law applies to this proceeding.
U would vote to grant the writ. Neither Mr. Hebert’s purported lack of awareness that Benzonatate was a banned substance until after the race nor his failure to conduct discovery provides sufficient justification under La.R.S. 49:964(E) for additional evidence to be allowed. Accordingly, I would grant the writ.